***********
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Donovan and the briefs and oral arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Donovan with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS *Page 2 
1. Triangle Residential Options for Substance Abusers, Inc. (TROSA) is a comprehensive, long-term, residential substance abuse recovery program located in Durham, North Carolina.
2. At all times relevant to this claim, TROSA had three or more employees and accordingly is subject to the Workers' Compensation Act.
3. At all times relevant to this claim, TROSA's employees were insured for workers' compensation by Synergy Coverage Solutions.
4. Plaintiff was a resident of the TROSA program at all times relevant to this claim.
5. Plaintiff contends that on March 5, 2007, while performing services for TROSA's moving company as part of the vocational aspect of the program, he injured his back, and that plaintiff is therefore an employee of TROSA entitled to benefits pursuant to the Workers' Compensation Act.
6. Plaintiff was treated for back pain at the TROSA campus and was taken by TROSA employees to other health care providers. Plaintiff underwent back surgery at UNC on May 21, 2007.
7. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of parties.
8. Plaintiff will present all medical records and bills currently in his possession at the December 7, 2009 hearing; all medical testimony, if it is to be presented, will or may be taken by deposition.
9. The parties stipulated the following documentary evidence: *Page 3 
 a. Stipulated Exhibit #1: I.C. Filings, plaintiff's criminal history, plaintiff's TROSA resident file, time records, medical records and billing, discovery, TROSA webpage and trainer's manual (supplemented post-hearing)
 *********** ISSUES
1. Whether plaintiff was an employee of TROSA; and
2. Whether plaintiff sustained a compensable injury on March 5, 2007, and if so, to what amount of compensation, including medical compensation, is plaintiff entitled.
 *********** Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following: FINDINGS OF FACT
1. Plaintiff was thirty-two years old at the time of the hearing before the Deputy Commissioner. He has a history in excess of 15 years of substance abuse and trouble with the law. In December 2006, plaintiff was incarcerated in the Carteret County jail serving a 14-month sentence. During his incarceration, plaintiff learned about a substance abuse recovery program called Triangle Residential Options for Substance Abusers, or TROSA, which was available as an alternative to incarceration.
2. TROSA is located in Durham, North Carolina. TROSA is a non-profit, comprehensive, long-term, residential substance abuse recovery program founded in 1994 to help substance abusers overcome their addictions. Its services include vocational training, education, communication, peer counseling and mentoring, leadership training and aftercare. *Page 4 
3. As part of their rehabilitation process, residents are required to participate in work therapy for eight hours per day, five to six days per week. In March 2007, TROSA regularly employed at least 45 full time paid staff members in addition to approximately 325 residents participating in the program. Additionally, TROSA employs a director of operations, a vice president of business operations, and owns or operates twenty-five facilities throughout Durham. TROSA purchases and provides workers' compensation coverage for its employees through Synergy Coverage Solutions.
4. There are a number of hurdles to being accepted into the TROSA program. After learning of the program, plaintiff wrote a letter to TROSA outlining his past drug use and his desire to overcome his addiction and straighten out his life. Thereafter, an interview was conducted at the Carteret County jail during which plaintiff again discussed his history of substance abuse and intent to overcome the same. Plaintiff was subsequently admitted into the program and transferred from the Carteret County jail to the TROSA facility on January 10, 2007, following a judge's approval of the program as an alternative to incarceration.
5. Plaintiff understood the program to be a two-year program through which he would be provided with drug counseling, housing, food, clothing, medical care, education and vocational training at no cost to him. Upon his arrival at TROSA, plaintiff went through an orientation process at which he signed paperwork, was educated on the specifics of the program and provided with clothes, hygiene products and a bunk. As part of the admission paperwork, plaintiff signed a Declaration of Resident Status form wherein he acknowledged that he would be expected to perform certain services as part of his vocational training in exchange for the benefits provided to him by TROSA, that any such services performed would not be considered *Page 5 
employment, he would receive no wages, and that no taxes or workers' compensation premiums would be paid on his behalf.
6. The vocational components within the TROSA program consist of internal operations and external businesses, including food service, facility maintenance, vehicle maintenance, office administration, transportation, medical, intake, finance, security, in kind donations, painting, brick masonry and warehousing. TROSA's external businesses include holiday sales, lawn care and maintenance, frame shop, used furniture shop, moving and storage, contract labor, and some small catering jobs by food service. All of these businesses and operations were in effect during plaintiff's stay in 2007.
7. Within the vocational component of TROSA's program, residents can move from one internal operation or external business to another as part of their vocational training. Plaintiff admitted that a resident "could be doing anything at any given day" and testified to his own assignments with the moving company, furniture store, security department and laundry facility.
8. When assigning a resident to a vocational function, TROSA staff members are charged, pursuant to Module 9 of the TROSA Training Manual, with considering the resident's developmental needs and the challenges and learning opportunities provided by each job. According to Keith Artin, TROSA's Chief Operating Officer, and the TROSA Training Manual, the job functions are provided for the residents' benefit in developing marketable skills, a strong work ethic and preparing for life after rehabilitation. The job functions allow the residents to take responsibility for themselves and their treatment. In keeping with these therapeutic goals, residents do not receive compensation for their services. *Page 6 
9. In February 2007, plaintiff was assigned to work within TROSA's moving company. TROSA Moving, one of TROSA's external businesses, is the number one income generator for TROSA. TROSA Moving is fully licensed and insured. TROSA Moving provides the public with estimates for moving jobs, owns their own moving trucks, has the company's name imprinted on the trucks, has the trucks licensed and insured through TROSA, and provides dollies and equipment necessary to do moving jobs. TROSA Moving pays their less experienced employees starting salaries of approximately $18,000.00 annually and pays their managers approximately $30,000.00 to $40,000.00 annually. There were approximately 12 paid employees of TROSA working in the moving business at the time of plaintiff's participation in the program.
10. There is no evidence that the paid employees of the moving company were ever moved to a different business operated by TROSA, should they become unable to continue in that employment. There is no evidence that in order for paid employees to maintain their employment in the moving company, they were ever judged on any criteria other than their ability to perform the job. However, the program residents were moved from business to business according to their therapeutic needs and remaining in the program was not necessarily contingent upon job performance. Rather, it was primarily tied to the resident's maintaining of the goals of the overall treatment to overcome drug addictions. In the same vein, it appears that employees who were hired to work in the moving company interviewed for the position and were hired based on a level of skill or experience in performing the job. In contrast, residents were placed in job positions with little regard to their level of skill or experience in the field, but rather upon the therapeutic needs of the resident as established by the operators of the program. *Page 7 
11. For these reasons, the Full Commission finds that the residents were not participating in the work of the various enterprises of TROSA as employees, but rather as participants in a treatment program. Further, the tasks of labor performed by the residents did not constitute job duties but instead were regimens designed to facilitate the treatment of their drug addictions.
12. As part of the TROSA program, residents are provided with free medical care. TROSA has a part-time nurse to handle basic, triage-type matters as well as a Wednesday night clinic where residents can be seen by volunteers from Duke Medical Center. TROSA schedules medical appointments for its residents when needed as well as transports them to and from such appointments. TROSA arranges outpatient visits at outside medical facilities as well as inpatient hospitalizations when needed at no cost to the residents. TROSA residents are considered indigent and, as such, most of their care is written-off by local medical facilities. If any charges are incurred, such as medication or co-pays, TROSA pays for it.
13. Plaintiff maintains that on or about March 5, 2007, he injured his back when he "twisted wrong" while moving a king-sized mattress as part of a residential move. Plaintiff completed a TROSA medical request slip on the date of injury. Plaintiff was taken to Lincoln Duke Urgent Care and received a prescription for a steroid and pain medication.
14. Subsequent to plaintiff's injury, he was put on light duty and worked in the laundry room. Plaintiff attempted to go back to the moving company on one occasion, but was unable to perform the tasks due to continuing back pain. On April 6, 2007, plaintiff was taken to the UNC Emergency Room where he underwent a lumbar MRI, which revealed a herniated disk. The physician at UNC recommended surgery and placed plaintiff on light duty. *Page 8 
15. Plaintiff continued to work light duty in the laundry room at TROSA until the May 21, 2007 surgery by Dr. Price at UNC. At that time, plaintiff underwent a left L5-S1 hemilaminectomy and discectomy. Plaintiff stayed in the hospital overnight following this surgery, after which he returned to TROSA where he remained in a recovery room for two days.
16. On May 24, 2007, a TROSA resident was tested for drugs and found to be positive for opiates. The resident stated that plaintiff gave him a narcotic pill. Plaintiff was asked to produce the remaining 24 hours worth of pills he should have had in his possession based on the pharmacy dispensary records. When plaintiff could not do so, he was dismissed from the program and returned to the Carteret County jail. Plaintiff ultimately served the remainder of his prior 14-month sentence in Greene County prison.
17. Plaintiff has not worked since being released from the TROSA program, maintaining that his back surgery was unsuccessful and that he currently experiences sciatic nerve pain and muscle atrophy which restrict his ability to work.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. In order to maintain a claim for compensation under the Act, the claimant must be, in fact and in law, an employee of the alleged employer. Askew v. Leonard Tire Co.,264 N.C. 168, 141 S.E.2d 280 (1965).
2. Because the Act only applies where an employer-employee relationship has been shown to exist, the question of whether the relationship existed at the time of the alleged injury *Page 9 
by accident is one of jurisdiction. Carter v. Frank Shelton,Inc., 62 N.C. App. 378, 303 S.E.2d 184 (1983).
3. In the instant case, the greater weight of the evidence shows that plaintiff did not enter into an employment arrangement with defendant, but rather entered into a therapeutic program in an attempt to end drug addictions. Further, the work performed by plaintiff while in defendant's program did not constitute job duties but instead were regimens designed to facilitate the treatment of his drug addictions. Accordingly, the Full Commission concludes as a matter of law that no employer-employee relationship existed between the parties; therefore, the Industrial Commission lacks jurisdiction over plaintiff's claim. N.C. Gen. Stat. § 97-2(1); Askew v.Leonard Tire Co., 264 N.C. 168, 141 S.E.2d 280 (1965);Hicks v. Guilford County, 267 N.C. 364, 148 S.E.2d 240 (1966).
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim must be, and is hereby, DENIED.
2. Each party shall bear its own costs.
This 7th day of October 2010.
 S/___________________ LINDA CHEATHAM COMMISSIONER
CONCURRING: *Page 10 
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER
 S/___________________ PAMELA T. YOUNG CHAIR